IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD HADLEY, | No. CIV S-09-1583-GEB-CMK-P |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| J. YATES, et al., | |
| Defendants. | |
| _____/ | |

      Plaintiff, a former state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.[1]  Pending before the court is plaintiff's amended complaint (Doc. 11).[2]

/ / /

/ / /

/ / /

---

[1] Based on notices of changes of address filed in August 2009, it appears that plaintiff is no longer in custody.

[2] The amended complaint was filed as of right on June 26, 2009, while plaintiff was still incarcerated.

1

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff names the following as defendants: Yates, Attlin, Tilton, and Flores.[3] Plaintiff alleges facts relating to: (1) replacement eyeglasses; (2) damage to his flat screen television; (3) confiscation of items from outside vendors; (4) denial of "first access" to wheelchair-accessible toilet, shower, and sink; and (5) a bill for Direct TV service; and (6) fraudulent police reports.

/ / /

/ / /

/ / /

---

[3] The court also notes that plaintiff's complaint contains various allegations concerning Governor Arnold Schwarzenegger. Specifically, plaintiff appears to allege that, as Governor, Schwarzenegger is liable for the conduct of subordinate state officials. Schwarzenegger, however, is not named as a defendant to this action.

Replacement Eyeglasses

Plaintiff states that, while housed in "Chino State Prison," he was assaulted by another inmate and that his eyeglasses were destroyed in the incident.[4]  According to plaintiff, he was provided medical treatment and "referrals" were written in order to obtain replacement eyeglasses at state expense.  Plaintiff alleges that "the glasses or even a visit to an optometrist was denied."  After plaintiff filed an inmate grievance, he was informed by the appeals coordinator that, regardless of the commitments made by staff at plaintiff's prior prison, replacement eyeglasses would not be provided at state expense because CDCR is not responsible for personal property destroyed by another inmate.  Plaintiff states that the refusal to provide him glasses at state expense is in violation of California regulations, which consider eyeglasses to be a "health care appliance" and not personal property.  According to plaintiff, he then filed a grievance concerning the glasses with defendant Attlin, who did not initially respond.  Plaintiff later learned from defendant Attlin that his grievance had been denied.

Damage to Television

Plaintiff claims that in March 2009 he received a "special purchase package" which included a new flat screen television and headphones.  According to plaintiff, prison officials refused to give plaintiff the antenna which came with the television and instructed him that he could plug the television directly into the cable outlet in the prison gym.  Plaintiff claims that other inmates in the gym denied him access to a cable outlet.  Plaintiff was told by the correctional officer on duty that access to the cable outlet was "first come first serve."  Plaintiff adds that, "after several trys [sic]," he was allowed by other inmates to plug in his television "provided he could get someone to plug it up for him. . . ."  Apparently, the cable outlets are high up on the wall and plaintiff, who is confined to a wheelchair, cannot reach the outlet.  Plaintiff

---

[4] The court presumes "Chine State Prison "refers to the California Institute for Men, which is located in Chino, California.  Plaintiff was transferred to Pleasant Valley State Prison approximately one month after the incident.

states that he filed an inmate grievance requesting that a cable outlet he can reach from his wheelchair be installed.  Plaintiff claims that he was informed that his request would be granted and that a "planning person" would be brought in "to see how the wheelchair asessible [sic] cable outlet would be installed."  Plaintiff states that, a few days later, "the Sgt. returned with defendant Attlin . . . [who] took it upon himself to twist the cable connected to my T.V. and damaged the hookup."  Plaintiff states that the television will need to be replaced or repaired.  According to plaintiff, he was told by defendant Attlin that he would no longer be allowed to use any cable outlet.

Confiscation of Items from Outside Vendors

Plaintiff complains generally about items received from outside vendors being confiscated on orders from defendants Yates and Attlin.

"First Access" to Wheelchair-Accessible Toilet, Shower, and Sink

Plaintiff claims that defendant Attlin, "with the approval of defendant Yates," instructed all correctional officers in the prison gym that "ADA, DPW inmates" have no right of "first access" to the only wheelchair-accessible toilet, shower, or sink in the facility.  According to plaintiff, he and other disabled inmates had to wait in line with non-disabled inmates for use of wheelchair-accessible facilities.

Direct TV Bill

Plaintiff alleges that defendant Flores "conspired with a Gloria Watkins" to deprive him of his constitutional rights.  According to plaintiff, he and Watkins had discussions regarding plaintiff hiring Watkins "on a commission basis to perform contractual marking in July 2008. . . ."  Plaintiff states that an office would be established in Watkins' home "under the plaintiff's business name."  Plaintiff and Watkins agreed, among other things, that a Direct TV account and other telecommunications services would be established in the office under plaintiff's business name and all bills would be paid by Watkins.  Apparently, however, charges were being made to these accounts but the bills were not being paid.

Fraudulent Police Reports

Plaintiff adds that, "[d]uring his association with Gloria Watkins she spoke to the plaintiff often of her personal relationship with defendant G. Flores and how defendant G. Flores had assisted her with false police reports and helped her with other people she knew to get her money back and other things such as running police checks on people she came into contact with." Plaintiff claims that defendant Flores conspired with Watkins to commit fraud with respect to the Direct TV account, as well as with respect to preparing false police reports regarding plaintiff. As to the latter, plaintiff appears to claim that defendant Flores arranged for the false police report to be provided to plaintiff's parole officer and that this resulted in plaintiff's current incarceration incident to revocation of his parole.

## II.  DISCUSSION

The court cannot discern any cognizable claim in plaintiff's allegations. As to eyeglasses, the only allegation against a named defendant is plaintiff's assertion that defendant Attlin at first ignored his grievance but that, ultimately, the grievance was denied. At best, these factual allegations relate to delay caused by defendant Attlin in processing of plaintiff's grievance. Such a claim, however, does not invoke any constitutional right. Prisoners have no stand-alone due process rights related to the administrative grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process). Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances. Numerous district courts in this circuit have reached the same conclusion. See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address grievances does not support constitutional

claim); James v. U.S. Marshal's Service, 1995 WL 29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967 (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function properly failed to state a claim under § 1983).

As with plaintiff's allegations concerning eyeglasses, the only named defendant mentioned with respect to the damaged television is defendant Attlin. Specifically, plaintiff claims that defendant Attlin "twist the cable connected to my T.V. and damaged the hookup." At best, this allegation goes to the deprivation of property insofar as plaintiff was denied use of his television by defendant Attlin's conduct. Where a prisoner alleges the deprivation of a liberty or property interest caused by the unauthorized action of a prison official, there is no claim cognizable under 42 U.S.C. § 1983 if the state provides an adequate post-deprivation remedy. See Zinermon v. Burch, 494 U.S. 113, 129-32 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984). A state's post-deprivation remedy may be adequate even though it does not provide relief identical to that available under § 1983. See id. at 531 n.11. An available state common law tort claim procedure to recover the value of property is an adequate remedy. See Zinermon, 494 U.S. at 128-29. Given plaintiff's ability to file a state tort action based on damage to his television, he cannot state a cognizable claim under § 1983.

Turning to plaintiff's allegations concerning confiscation of property from outside vendors, plaintiff does not assert that any of his property was confiscated. Rather, he contends generally that property is improperly confiscated. In any event, such a claim raises the possibility of an unauthorized deprivation of a property interest. As discussed above, because plaintiff has access to adequate post-deprivation remedies, he cannot state a claim under § 1983.

/ / /

/ / /

/ / /

1 Next, the court addresses plaintiff's claim that he and other disabled inmates were
2 denied a right of "first access" to the only wheelchair-accessible toilet, shower, and sink in the
3 prison gym. Plaintiff does not, however, allege denial of all access. Instead, he indicates only
4 that he was required to wait in line for use of the wheelchair-accessible facilities. The court finds
5 that this allegation does not implicate the violation of any of federal statutory or constitutional
6 right.

7 Finally, the court turns to plaintiff's allegations relating to defendant Flores and
8 Gloria Watkins. To the extent plaintiff alleges that he is now responsible for charges to various
9 accounts he did not authorize, the court finds that such a claim relates to a property interest and
10 that plaintiff has adequate post-deprivation remedies. As discussed above, he does not state a
11 claim relating to the Direct TV and other bills. To the extent plaintiff claims that defendant
12 Flores caused a false police report to be submitted to his parole officer and that this act resulted
13 in revocation of his parole and subsequent return to custody, such a claim is barred in a § 1983
14 action because success on the merits would imply the invalidity of the revocation of plaintiff's
15 parole. See Heck v. Humphrey, 512 U.S. 477, 483-84 (1994).
16 / / /
17 / / /
18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /

### III.  CONCLUSION

Because it does not appear possible that the deficiencies identified herein can be cured by amending the complaint, plaintiff is not entitled to leave to amend prior to dismissal of the entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).

Based on the foregoing, the undersigned recommends that:

1. This action be dismissed for failure to state a claim; and
2. All pending motions be denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 25, 2009

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE